ISABELLE L. ORD (SBN 198224)
*isabelle.ord@us.dlapiper.com*
JEANETTE BARZELAY (SBN 261780)
*jeanette.barzelay@us.dlapiper.com*
LUPE R. LAGUNA (SBN 307156)
*lupe.laguna@us.dlapiper.com*
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA 94105
Tel: 415.836.2500
Fax: 415.836.2501

RAJ N. SHAH (*pro hac vice*)
*raj.shah@us.dlapiper.com*
ERIC M. ROBERTS (*pro hac vice*)
*eric.roberts@us.dlapiper.com*
**DLA PIPER LLP (US)**
444 West Lake Street, Suite 900
Chicago, IL 60606
Tel: 312.368.4000
Fax: 312.236.7516

Attorneys for Defendant
APPLE INC.

MICHAEL R. REESE
*mreese@reesellp.com*
CARLOS F. RAMIREZ (pro hac vice)
*cramirez@reesellp.com*
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Tel: (212) 643-0500
Fax: (212) 253-4272

GEORGE V. GRANADE
*ggranade@reesellp.com*
**REESE LLP**
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Tel: (310) 393-0070; (212) 643-0500
Fax: (212) 253-4272

KATE JEFFERY STOIA
*kstoia@reesellp.com*
**REESE LLP**
4030 23rd Street
San Francisco, California 94114
Tel: (415) 260-0147
Fax: (212) 643-0500

Attorneys for Plaintiff DAVID ANDINO
and the Proposed Class

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

| | |
|---|---|
| DAVID ANDINO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC., a California Company,<br><br>Defendant. | CASE NO. 2:20-CV-01628-DAD-AC<br><br>**JOINT STATEMENT RE DISCOVERY DISAGREEMENT**<br><br>Courtroom:  26<br>Judge:  Hon. Allison Claire<br><br>Noticed Hearing Date:  October 18, 2023<br>   (ordered submitted without hearing)<br>Noticed Hearing Time:  10:00 a.m. |

**TABLE OF CONTENTS**

I.     NATURE OF THE ACTION........................................................................6

       A.     Apple's Statement on the Nature of the Action. ...................................6

              1.     Plaintiff Placed his Devices and Data at Issue but Refuses to Provide
                     Them for Inspection. .................................................................6

              2.     Apple's Inspection Demand Is Reasonable, and the Plaintiff's
                     Objections and Alternative Discovery Methods Are Unfounded and
                     Insufficient. .............................................................................8

       B.     Plaintiff's Statement on the Nature of the Action ..............................11

              1.     Plaintiff Did Not Place His Devices and Data at Issue. ..............11

              2.     Inspection of Plaintiff's Devices Is Unwarranted in a Price Premium
                     Case. .....................................................................................13

              3.     Plaintiff Was Injured by Defendant's Deceptive Conduct. ...........14

              4.     Plaintiff Did Not Allege Loss of Content Thus Deletion Is Wholly
                     Irrelevant. ..............................................................................14

II.    CONTENTIONS OF THE PARTIES ......................................................15

       A.     Apple's Contentions and Points of Authorities ..................................15

              1.     Legal Standard........................................................................15

              2.     There Is Good Cause to Compel the Plaintiff to Produce His Devices
                     for a Limited Forensic Inspection. ............................................16

                     a.     The inspection request seeks relevant information. ...............17

                     b.     The information is not in Apple's records or any other
                            source. ..........................................................................21

                     c.     Apple's inspection request is tailored to eliminate any
                            legitimate burden, convenience, or privacy concern, and the
                            plaintiff does not meet his burden to show how the request is
                            objectionable. ................................................................22

       B.     Plaintiff's Contentions and Points of Authorities ..............................22

              1.     Legal Standard........................................................................22

              2.     Information Stored on Plaintiff's Devices Is Not Relevant to Any
                     Claim or Defense in This Action...............................................23

              3.     Forensic Imaging Is Exceedingly Rare and Only Ordered in Cases
                     Where Improper Conduct Is Shown............................................26

                     a.     Plaintiff Engaged in No Improper Conduct. .............................27

                     b.     Defendant Rejected Less Intrusive Means to Gain the
                            Requested Information. ....................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AEG Holdco, LLC. v. Vazquez*,
   2022 WL 19076641 (C.D. Cal. Nov. 15, 2022) ................................................................ 15, 17

*Alexis v. Rogers*,
   2017 WL 1073404 (S.D. Cal. Mar. 21, 2017)........................................................................ 22

*Aminov v. Berkshire Hathaway Guard Ins. Cos.*,
   2022 WL 818944 (E.D.N.Y. Mar. 3, 2022) ..................................................................... 20, 25

*In re Apple Inc.*,
   2019 U.S. Dist. LEXIS 143267 .............................................................................................. 21

*In re Apple Inc. Device Performance Litig.*,
   2019 WL 3973752 (N.D. Cal. Aug. 22, 2019) ......................................................... 17, 18, 23

*Arredondo v. Delano Farms Co.*,
   2015 U.S. Dist. LEXIS 142602 (E.D. Cal. Oct. 19, 2015) .................................................. 15

*Big City Dynasty v. FP Holdings, L.P.*,
   336 F.R.D. 507 (D. Nev. 2020) ............................................................................................. 19

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*,
   2012 WL 70428 (N.D. Cal. Jan. 9, 2012) ............................................................................. 16

*Bumpus v. U.S. Fin. Life Ins. Co.*,
   2023 U.S. Dist. LEXIS 135918 (E.D. Cal. Aug. 3, 2023) ............................................. 15, 17

*Dash v. Seagate Technology (US) Holdings, Inc.*,
   2015 WL 4257329 (E.D.N.Y. July 14, 2015) ................................................................. 19, 23

*Dawe v. Corr. USA*,
   263 F.R.D. 613 (E.D. Cal. 2009)........................................................................................... 16

*Dichter-Mad Family Partners, LLP v. United States*,
   709 F.3d 749 (9th Cir. 2013) ................................................................................................. 14

*Epstein v. MCA*,
   54 F.3d 1422 (9th Cir. 1995) ................................................................................................. 15

*FCA US LLC v. Bullock*,
   329 F.R.D. 563 (E.D. Mich. 2019)................................................................................... 26, 27

*Finkelstein v. San Mateo Cnty. Dist. Attorney's Off.*,
   2018 WL 8193870 (N.D. Cal. May 17, 2018) ...................................................................... 16

JOINT STATEMENT RE DISCOVERY DISAGREEMENT

*In re Ford Motor Co.*,
   345 F.3d 1315 (11th Cir. 2003) .......................................................................................... 20, 26

*Gomez v. Acharya*,
   2020 U.S. Dist. LEXIS 186324 (E.D. Cal. Oct. 7, 2020) ...................................................... 15

*Grabek v. Dickinson*,
   2012 WL 113799 (E.D.Cal. Jan.13, 2012) ............................................................................ 21

*Hawkins v. Shearer*,
   No. 2:19-CV-02295-CKD ...................................................................................................... 21

*Herskowitz v. Apple Inc.*,
   12-CV-2131-LHK, ECF No. 98 (N.D. Cal. Feb. 12, 2014) .................................................... 18

*Herskowitz v. Apple Inc.*,
   5:12-cv-02131-LHK (N.D. Cal. Dec. 30, 2014) ..................................................................... 23

*John B. v. Goetz*,
   531 F.3d 448 (6th Cir. 2008) .................................................................................................. 25

*Juel v. Apple Inc.*,
   12-CV-3124-LHK, ECF No. 66 (N.D. Cal. Feb. 12, 2014) .................................................... 18

*Lerman v. Apple Inc.*,
   No. 1:15-cv-7381, ECF No. 44 (E.D.N.Y. Jan. 25, 2018) ................................................ 18, 23

*Lifetouch Nat'l Sch. Studios, Inc. v. Moss-Williams*,
   2013 WL 11235928 (N.D. Cal. Oct. 15, 2013) ...................................................................... 16

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
   329 F.R.D. 656 (D. Or. 2019) ...................................................................................... 19, 22, 23

*Preston v. Cnty. Of Macomb*,
   No. 18-12158, 2021 WL 4820556 (E.D. Mich. Oct. 15, 2021) ........................................ 20, 26

*Ries v. Ariz. Bevs. USA LLC*,
   2013 U.S. Dist. LEXIS 46013 (N.D. Cal. Mar. 28, 2013) ..................................................... 20

*Salisbury v. Hickman*,
   2013 U.S. Dist. LEXIS 115024 (E.D. Cal. Aug. 14, 2013) ................................................... 15

*Satmodo, LLC v. Whenever Commc'ns, LLC*,
   2018 WL 3495832 (S.D. Cal. July 20, 2018).......................................................................... 16

*Sonner v. Schwabe N. Am., Inc.*,
   911 F.3d 989 (9th Cir. 2018)................................................................................................... 20

*Sophia & Chloe, Inc. v. Brighton Collectibles, Inc.*,
   2013 WL 5212013 (S.D. Cal. Sept. 13, 2013) ....................................................................... 22

JOINT STATEMENT RE DISCOVERY DISAGREEMENT

*United Artists Corp. v. United Artist Studios LLC*,
    2019 WL 9049050 (C.D. Cal. Oct. 7, 2019) ............................................................... 15

*Wagner Aeronautical, Inc. v. Dotzenroth*,
    2022 WL 198805 (S.D. Cal. Jan. 20, 2022) ............................................................... 19

*Womack v. Virga*,
    2011 WL 6703958 (E.D.Cal. Dec. 21, 2011) ............................................................. 22

**Statutes**

Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq*. ............................................ 13, 18

False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq*. .......................................... 13

Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*. ....................................... 13, 18

**Other Authorities**

Fed. R. Civ. P. 26(b)(1) .................................................................... 14, 15, 19, 20

Fed. R. Civ. P. 26(b)(2)(B) ............................................................................ 15

Fed. R. Civ. P. 34(a) ................................................................................... 25

Fed. R. Civ. P. 34(a)(1)(A) ............................................................................ 15

Fed. R. Civ. P. 37(a)(5)(A) ............................................................................ 15

Local Rule 251 .......................................................................................... 5

8 Wright & Miller, Federal Practice and Procedure § 2011 (3d ed.) ...................................... 19

Pursuant to Local Rule 251, Defendant Apple Inc. ("Apple") and Plaintiff David Andino submit this Joint Statement re Discovery Disagreement ("Joint Statement") regarding Apple's Motion to Compel Production of Plaintiff's Devices for Forensic Inspection ("Motion").  *See* ECF No. 48.  The parties met and conferred in advance of the filing of Apple's Motion but were unable to resolve their differences, necessitating this Motion.

I.    **NATURE OF THE ACTION**

A.    **Apple's Statement on the Nature of the Action.**

1.    **Plaintiff Placed his Devices and Data at Issue but Refuses to Provide Them for Inspection.**

Apple seeks to compel a limited inspection of the devices ("Devices")[1] the plaintiff used to purchase, download, use, and otherwise access the Digital Content at the heart of this case.  The plaintiff claims he purchased Digital Content (which he defines as music, TV shows, and movies)[2] on Apple's iTunes Store.  The plaintiff allegedly believed his Digital Content would be accessible to him on Apple's iTunes Store at all times in perpetuity even though the Apple Media Services Terms and Conditions ("Terms") applicable to his purchases clearly warned him to download the content or "back it up" because it "may not be available for subsequent download at any given time."[3]  The Terms in effect at the time the plaintiff purchased Digital Content provided:

- "[I]t is your [the user's] responsibility not to lose, destroy, or damage [iTunes eligible content], and you may want to back it up." (Ord Decl. ¶ 6, Ex. 3 at 5.)

- ". . . YOU SHALL BE RESPONSIBLE FOR BACKING UP YOUR OWN SYSTEM, INCLUDING ANY ITUNES PRODUCTS PURCHASED, ACQUIRED OR RENTED FROM THE ITUNES STORE."  (*Id.* at 10.)

- "Apple reserves the right to modify, suspend, or discontinue the iTunes Service (or any part or content thereof) at any time with or without notice to you, and Apple will not be liable to

---

[1] Apple's inspection demand defines "Your Devices" as any and all devices that the plaintiff claims he "used to purchase or access Digital Content, including, but not limited to, any laptop computers, desktop computers, cell phones, tablets, Apple TVs, and iPods." (*See* Declaration of Isabelle Ord ("Ord Decl.") ¶ 4, Ex. 1 at 2.)  The plaintiff's interrogatory answers identify the Devices he used to purchase or access Digital Content.  (*Id.* ¶ 5, Ex. 2 at 3.)

[2] The Amended Complaint defines "Digital Content" as "movies, television shows, music and other media" that Apple sells through the iTunes Store and related applications. (ECF No. 11, FAC ¶¶ 1-2.)

[3] This wording was in effect in June 2016, when the plaintiff made purchases of Digital Content.  All versions of the Terms in effect during the putative class period included warnings that Apple users should download their content and that Apple does not guarantee the perpetual availability of or access to content.  (*See* Ord Decl. ¶ 6, Exs. 3, 4, 5)

you or to any third party should it exercise such rights." (*Id.* at 9.)

- THE ITUNES SERVICE AND ALL PRODUCTS AND SERVICES DELIVERED TO YOU THROUGH THE ITUNES SERVICE ARE (EXCEPT AS EXPRESSLY STATED BY APPLE) PROVIDED "AS IS" AND "AS AVAILABLE" FOR YOUR USE, WITHOUT WARRANTIES OF ANY KIND . . . ." (*Id.*)[4]

And the current Terms (in place when the plaintiff made Digital Content purchases) provide:

- "Purchased Content will generally remain available for you to download, redownload, or otherwise access from Apple. *Though it is unlikely, subsequent to your purchase, Content may be removed from the Services (for instance, because the provider removed it) and become unavailable for further download or access from Apple.* To ensure your ability to continue enjoying Content, we encourage you to download all purchased Content to a device in your possession and to back it up." (Ord Decl. ¶ 6, Ex. 5 at 3 (emphasis added).)

- "Content also may be removed from our Services at any time, after which it cannot be downloaded, redownloaded, or otherwise accessed from Apple." (*Id.* at 4.)

- "YOU AGREE THAT UNLESS REQUIRED BY APPLICABLE LAW, APPLE HAS NO RESPONSIBILITY TO CONTINUE MAKING CONTENT AVAILABLE TO YOU THROUGH OUR SERVICES, AND APPLE WILL NOT BE LIABLE TO YOU IF CONTENT, INCLUDING PURCHASED CONTENT, BECOMES UNAVAILABLE FOR DOWNLOAD OR STREAMING." (*Id.* at 12.)

The plaintiff agreed to these Terms by using the iTunes services to purchase Digital Content. (ECF No. 11, FAC ¶¶ 1, 4.)  Now, the plaintiff claims Apple misled him because at some point he allegedly discovered that Digital Content could become unavailable in the future.  The plaintiff does not allege that he has lost any specific Digital Content, but he seeks to certify California and nationwide classes of purchasers of Digital Content—including those who *never* lost access to any Digital Content—based on the theory that they paid a price premium because their Digital Content *might* become unavailable on iTunes at some uncertain point in the future.

Given these claims, the plaintiff has placed his purchase and use of Digital Content at issue, leading Apple to seek discovery regarding (1) what Digital Content he purchased, (2) whether and how he uses or accesses that Digital Content, (3) whether the plaintiff heeded Apple's warning to

---

[4]  The Terms in effect from June 30, 2015 through September 12, 2016 similarly provided that Digital Content "may not be available for subsequent download at any given time."  Accordingly, Apple warned that, "[a]s you may not be able to subsequently download certain previously-acquired iTunes Eligible Content, *once you download an item of iTunes Eligible Content, it is your responsibility not to lose, destroy, or damage it, and you may want to back it up.*" (Ord Decl. ¶ 6, Ex. 3 at 5 (emphasis added)).

download or otherwise back up any of his Digital Content, and if so, which content and when, (4) which purchased Digital Content, if any, the plaintiff can no longer access and whether that inaccessibility was caused by him or Apple, and (5) if the plaintiff lost access to Digital Content, how much value he and others got from his purchases before the content became inaccessible.  These issues are directly relevant to Apple's defenses to liability and damages and whether the plaintiff can sustain his claims or prove them on a class-wide basis.

Apple requested to inspect the Digital Content-related data on the plaintiff's Devices because the answers to these issues reside exclusively "on [Plaintiff's] devices, in file repositories, metadata, and other data sources available only through a forensic collection from the devices." (*See* Declaration of James Vaughn ("Vaughn Decl.") ¶ 6.)  Indeed, the plaintiff recently admitted that "[a]ny evidence related to his claims is stored in his iPhone" while simultaneously refusing Apple's inspection demand and disclaiming the relevance of any data on his Devices.  (Ord Decl. ¶ 7, Ex. 6 at 10.)  He also served discovery requests on Apple seeking detailed information about the Digital Content he purchased—*e.g.*, whether it became unavailable to any user at any time, when, and why—even though the plaintiff purportedly contends that anything that happened to his Digital Content after the point of sale is irrelevant and has categorically objected to Apple's narrow inspection demand on that basis.  (*Id.* ¶ 8.)  But information regarding what the plaintiff sees on his devices, what he downloaded, what he may have deleted, and his usage of Digital Content is relevant and unique to his Devices, and Apple does not have and cannot obtain this information through any other means.  Apple's Motion is amply supported by good cause and should be granted.

### 2. Apple's Inspection Demand Is Reasonable, and the Plaintiff's Objections and Alternative Discovery Methods Are Unfounded and Insufficient.

Apple served its First Set of Requests for Production ("RFPs") and First Set of Interrogatories on the plaintiff in January 2022, seeking documents and information relating to the Devices that the plaintiff used to access and purchase Digital Content, the steps he took to preserve or back up his Devices, his purchases of Digital Content, his downloading of any Digital Content, and the unavailability or inaccessibility of any Digital Content.  (Ord Decl. ¶ 9.)  In the plaintiff's responses, he confirmed that he has taken <u>no</u> steps to preserve or forensically image his Devices

since he filed this lawsuit in 2020.  Additionally, the responses provide little information regarding the plaintiff's relevant purchases and activity concerning the Digital Content; the plaintiff repeatedly states that he "cannot recall" such information.[5]  (*Id.* at ¶ 10, Exs. 7, 8.)  The plaintiff also produced screenshots from his Devices apparently showing some purchased Digital Content (*id.* at ¶ 10.), but the screenshots are incomplete, are only a snapshot in time, and exclude metadata related to the plaintiff's access to and use of his Digital Content.[6]  (Vaughn Decl. ¶ 12.)

In early 2023, the parties agreed to informally coordinate discovery in this case with a parallel case, *McTyere, et al. v Apple Inc.*, 1:21-CV-1133- LJV (W.D.N.Y.), in which the plaintiff's counsel here represent two putative class plaintiffs alleging nearly identical claims.[7]  On June 8, 2023, shortly after the initial scheduling conference in *McTyere*, Apple asked the plaintiff's counsel to discuss a "request for the inspection of the devices." (*Id.* ¶ 11, Ex. 9.)  The parties preemptively met and conferred on June 15, 2023. (*Id.* ¶ 12) Apple explained the types of data and information that Apple would seek from the Devices, why it is relevant, and why Apple's records do not contain that information.  (*Id.*)  Above all else, Apple made clear that it has no interest in irrelevant or privileged information.  Apple proposed a protocol for a narrow inspection of only information that constitutes or relates to the Digital Content and the plaintiff's relevant usage.  All other material would be sequestered and never provided to Apple.  (*Id.*).  The plaintiff's counsel agreed to consider these points.  (*Id.*)

On June 27, 2023, Apple issued a formal request for inspection of the plaintiff's Devices:

> Produce Your Devices for forensic copying and production to Apple of data from Your devices showing: (1) the purchases of Digital Content You made; (2) whether any of the Digital Content You purchased is no longer available to You; (3) whether You downloaded any Digital Content You purchased and, if so, whether You still have access to downloaded copies

---

[5]  Apple reserves all rights to move to compel further responses to its other discovery requests at a later date, and it reserves all rights as to deficiencies in preservation by the plaintiff.

[6]  The plaintiff's refusal to produce metadata for data that resides on his Devices would deprive Apple of relevant information and violate the Court-ordered ESI Stipulation, which requires production of metadata.  (*See* ECF No. 33.)

[7]  Apple filed a similar motion to compel forensic inspection in *McTyere*, which will be fully briefed as of October 4, 2023, and taken under advisement without oral argument.  During an informal conference on September 6, the *McTyere* Court provided its informal leanings regarding the parties' positions, noting that the inspection "ought to be allowed" because the burden on the plaintiffs is not extensive, their privacy concerns would be adequately protected, and the plaintiffs placed their information at issue based on the claims as alleged in the Complaint.  (Ord Decl. ¶ 20, Ex. 15 at 14.)

> of that Digital Content; (4) whether You deleted any Digital Content You purchased and if so when; (5) your usage of the Digital Content You purchased; and (6) any backup(s) of Your Devices housed in Your iTunes and/or iCloud account.

(*Id.* ¶ 4, Ex. 1.)  In a further meet and confer on July 21, 2023, Apple reiterated its positions on relevance and again proposed a protocol to avoid irrelevant and private information and minimize any inconvenience.  The plaintiff's counsel agreed to consider these points.  (*Id.* ¶ 13.)

On July 27, 2023, the plaintiff formally responded to Apple's inspection request with nothing but boilerplate objections that the inspection request is unduly burdensome, oppressive, harassing, overbroad, not proportional, not relevant, and "not warranted without at least giving Plaintiff an opportunity to fulfill his discovery obligations in the manner of his choosing."  (*Id.* ¶ 14, Ex. 10.) While maintaining those objections and refusing to produce his Devices for inspection, the plaintiff admitted in subsequent amended discovery responses served on September 8 that "[a]ny evidence related to his claims is stored in his iPhone."  (Ord Decl. ¶ 7, Ex. 6 at 10.)

On August 2, 2023, Apple sent a further meet-and-confer e-mail expressing concerns regarding the plaintiff's chosen production methods—which were limited to static screenshots— and his apparent lack of preservation efforts and the potential for spoliation or other destruction of potentially relevant information and providing authorities supporting Apple's inspection request in advance of the next meet and confer.  (*Id.* ¶ 15, Ex. 11.)

On August 7, 2023, the parties met and conferred again. (*Id.* ¶ 16.) To facilitate the plaintiff's understanding of how the limited information Apple seeks can be collected from the Devices in a forensically sound manner that ensures preservation, while also preventing Apple from gaining access to irrelevant information, Apple's third-party forensic expert, James Vaughn, attended the meet and confer.  (*Id.*; Vaughn Decl. ¶ 13.)  Mr. Vaughn explained the protocol and procedures he would follow to obtain only necessary and relevant data from the plaintiff's Devices while safeguarding against unnecessary disclosure of private and confidential data.  (Ord Decl. ¶ 16; Vaughn Decl. ¶ 13.)  Mr. Vaughn also directly addressed the plaintiff's convenience concerns.  He explained that his team could travel (at Apple's expense) to the plaintiff's hometown (or any other location) to image the relevant Devices, at a time and place convenient to the plaintiff, and that the

process would take only approximately one to three hours per Device.  (Vaughn Decl. ¶ 13.)  The call lasted approximately 30 minutes and during that time, the plaintiff's counsel asked questions of Mr. Vaughn and agreed to get back to Apple later that week.  (*Id.*; Ord Decl. ¶ 16.)

On August 14, the plaintiff's counsel responded that further meet and confers would "not be fruitful" and that they "will not be providing our clients' devices for scanning."  (*Id.* ¶ 17, Ex. 12.) The plaintiff's counsel claimed, without any authority or factual support, that the inspection request is "way outside" the permissible scope of discovery "for a case like the present one" and that it "sends a chilling effect" to the plaintiff because "the stakes are relatively low" for him.  (*Id.*)  The plaintiff's counsel also argued that the data Apple seeks—including "how many times they used the items after purchase (if any), or whether it was downloaded or backed up somehow"—is irrelevant due to the plaintiff's price premium theory.  (*Id.*)  Specifically, the plaintiff contends that because he was not aware that Digital Content might possibly disappear at some point in the future when he purchased his Digital Content, it does not matter whether he ever actually lost any Digital Content, and therefore the data on his Devices is meaningless to the case.  Apple disagrees,[8] and on August 18, confirmed that the parties had reached an impasse.  (*Id.* ¶ 18, Ex. 13.)  This Motion followed.[9]

## B.   Plaintiff's Statement on the Nature of the Action

### 1.   Plaintiff Did Not Place His Devices and Data at Issue.

Plaintiff did not place his devices and data at issue because no such thing could ever happen in a price premium case. Indeed, Plaintiff's claims arose the minute he purchased Digital Content at an inflated price due to Apple's deceptive conduct. Any information stored on his devices after the fact are wholly irrelevant. Plaintiff's well pled allegations make this clear.

---

[8] The plaintiff's discovery requests to Apple also contradict his contention that it does not matter whether he ever actually lost any Digital Content.  The plaintiff is seeking substantial discovery from Apple regarding the availability of his Digital Content post-purchase, including whether any such content is presently available or was "modified or removed from the Platform and thereby became unavailable to Plaintiff" at any time.  (Ord Decl. ¶ 19, Ex. 14 at 5.)  The plaintiff's request for this same information in discovery concedes that it is relevant.

[9] On August 29, Apple filed a Notice of Motion and Motion to Compel Production of Plaintiff's Devices for Forensic Inspection with a hearing date set for October 4.  (ECF No. 45.)  On September 20, the parties agreed to continue the hearing date to October 18 to allow for Apple's similar motion to compel forensic inspection of devices in *McTyere* to be fully briefed and reviewed first.  The parties agreed that it would be most efficient to allow the *McTyere* court to rule on the submitted motion first as the ruling may affect whether the plaintiff here agrees to produce his Devices for forensic inspection.  (Ord Decl. ¶ 21.)

Specifically, Plaintiff alleged that Apple misled reasonable consumers into paying more than they otherwise would have by misrepresenting that they were buying ownership of Digital Content[10] at the point of purchase when, in truth, they were essentially getting a lease. Just as a video store customer would be injured if she paid to "purchase" a DVD but instead received only the rental of that DVD, the injury occurred here at the moment of sale. The question of where that video store customer stored the DVD, whether she ever tried to watch the DVD or even lost it entirely, is wholly irrelevant to a claim that the store tricked her into overpaying for something that was not what it was represented to be. Such is the case here. At the moment that Plaintiff purchased Digital Content from Defendant for valuable consideration, he was harmed because he paid more for it than he would have had the Digital Content been represented in a non-misleading manner. Indeed, the FAC alleged a simple and straightforward price premium theory of liability and damages.

Specifically, the FAC alleged:

- The *value of the Digital Content* that Plaintiff and the Class members purchased and consumed *was materially less* than its value as represented by Defendant. FAC ¶24.

- Had Plaintiff and Class members known the truth, they *would not have bought the Digital Content from Defendant or would have paid substantially less for it*. As a result of the false and misleading representations, the Digital Content is *sold at premium price*, compared to other similar Digital Content and services represented in a non-misleading way. FAC ¶25.

- The *Digital Content Plaintiff and the Class members received was worth less than the Digital Content for which they paid*. Plaintiff and the Class members *paid a premium price* on account of Defendant's misrepresentations and/or omissions detailed herein. FAC ¶57.

Plaintiff's FAC also makes crystal clear that whether or not Plaintiff—or any Apple customer—can access "purchased" Digital Content after the "purchase" on any particular device is not at issue in this case. Specifically, the FAC alleges that:

Though some consumers *may get lucky and never lose access* to any of their paid-for media, others may one day find that their Digital Content is now gone forever. *Regardless, all consumers have overpaid for the Digital Content because they are not in fact owners of the Digital Content as represented by Defendant*, despite having paid the amount of consideration typically tendered to "Buy" the

---

[10] Capitalized terms used by Plaintiff that are not defined herein shall have the meanings set forth in the FAC dated December 7, 2020 (ECF No. 11).

product.

FAC ¶ 19.

Thus, the fact that Plaintiff did not lose access to Digital Content is irrelevant to his claims, which is why he never alleged that he lost any. This is buttressed by the fact that he does not seek on behalf of the Class the return of any lost Digital Content. Plaintiff's claim, and the damage that he and the Class suffered, is based solely on the price premium he paid for Digital Content due to Defendant's misconduct. Plaintiff's own conduct *after* his purported "purchase" has no bearing on his claim or his injury. As a result, physical inspection or imaging of the devices Plaintiff used to "purchase" Digital Content from Defendant is wholly irrelevant.

**2.      Inspection of Plaintiff's Devices Is Unwarranted in a Price Premium Case.**

The forensic imaging of an electronic device is only appropriate when the device's performance, or a defect in said device, is placed at issue. Because this case relies upon the reasonable consumer standard, it does not implicate Plaintiff's personal conduct other than his purchase of Digital Content and it certainly does not implicate his use of Apple devices in connection with this purchase of Digital Content. As alleged in the Complaint, since August 13, 2016 through the present (the "Class Period")(FAC ¶ 32), Defendant offered Digital Content to consumers through its "iTunes" online store, which can be accessed through Defendant's website, app, or "Apple TV" device. FAC ¶ 2. The manner in which Defendant offered consumers the option to "Buy" or Rent" Digital Content led, and continues to lead, reasonable consumers to believe that, when they choose to "Buy" Digital Content, they have purchased such content for indefinite use. FAC ¶ 15. Once "bought," said content instantly becomes available in the consumer's Digital Content library without requiring the consumer to accept any terms and conditions pursuant to a clickwrap agreement. The Digital Content is then displayed in a folder titled "Purchased." FAC ¶ 12. The much higher purchase price charged by Defendant for Digital Content, in comparison to the much lower price it charges for a rental of the same content, further convinces consumers that they are purchasing and obtaining full ownership rights to said content. FAC ¶¶ 3-4. These misleading tactics have undoubtedly allowed Defendant to make millions (perhaps even billions) of dollars in

improper profits throughout the Class Period. FAC ¶ 32.

### 3. Plaintiff Was Injured by Defendant's Deceptive Conduct.

The FAC alleges that Plaintiff:

- purchased Digital Content from Apple by clicking on a "Buy" button (FAC ¶ 1-4, 6-7, 9-10, 32), which was then transferred into a "Purchased" folder (FAC ¶¶ 12-13);

- were induced by Apple, through misleading labeling and advertising, to purchase, and pay a premium price for, Digital Content and/or enter into a transaction they otherwise would not have entered into had they known they were merely obtaining a license to use Digital Content from Apple (FAC ¶¶ 17, 20, 22-25, 53-58, 66-71, 81-88, 93);

- believed that Defendant's use of the word "Purchased" meant that they owned the Digital Content they bought from Apple (FAC ¶¶ 15-18);

- believed that they would have access to view (or listen to) the purchased Digital Content indefinitely via Apple's platform and through accessing it in their "Purchased" folder (FAC ¶¶ 12-21); and

- were harmed by overpaying for Digital Content "purchased" from Defendant (FAC ¶¶ 19, 24, 25, 57, 69-71, 87-88)

Plaintiffs' allegations state legal claims under California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq*., California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq*. and the unlawful, unfair, and fraudulent prongs of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*.  Indeed, Plaintiff's claims have already survived Defendant's motion to dismiss.

### 4. Plaintiff Did Not Allege Loss of Content Thus Deletion Is Wholly Irrelevant.

The parties agree that Plaintiff never alleged that he lost any Digital Content. The parties also agree that Plaintiff's claims are based on his payment of a price premium for Digital Content due to Defendant's misrepresentations. Because Plaintiff does not claim he lost Digital Content, and only claims he overpaid for it, anything that happened to that Digital Content after purchase – whether it was downloaded or not, whether it was viewed or listened to once, one hundred times, or never – is irrelevant. The only issue in this case is whether Defendant misled Plaintiff and consumers like him into paying more than they would have for the Digital Content had they known the truth.

Defendant argues that it needs to see whether Plaintiff downloaded Digital Content onto his

Apple device in order to assert defenses and/or to challenge damages suffered by plaintiff. But Apple's argument conveniently ignores the fact that a consumer's access to purchased content is tied not to any particular device but to that consumer's Apple ID and password. With his Apple ID, a consumer can access, view and download any Digital Content that has not been removed from Apple's platform. Even if a consumer were to download and then delete Digital Content, that Digital Content is still available for further downloading and viewing UNLESS the content has been removed or modified by the copyright owner. In other words, a consumer's inability to access purchased Digital Content for listening/viewing, as well as to redownload it onto his Apple device, is never due to the consumer's actions and only due to Apple's actions. The damage to Plaintiff and other consumers is in the overpayment due to the potential loss of access which can happen at any time and without notice (and which is hidden by Apple through the removal of Digital Content from a consumer's "Purchased" folder, as though the purchase had never happened).

Defendant's demand to image Plaintiff's devices to see what he has deleted is further undercut by the fact that Defendant can easily and quickly identify whether a piece of Digital Content was removed or modified (with both instances leading to the loss of said content by the consumer forever). Defendant's discovery production to date has proven that Defendant's own business records contain all relevant information about what is/is not available to any given purchaser of content at any given time. The only deletion that is relevant in this case is the deletion of content from Defendant's platform, which causes consumers to lose the content forever, versus anything that may have happened on the consumer side. Defendant has known this for years and, instead of remedying the situation, it instead seeks to blame its victims and intimidate them from seeking redress by demanding an extremely intrusive forensic scan of all of their Apple devices.

## II.    CONTENTIONS OF THE PARTIES

### A.    Apple's Contentions and Points of Authorities

#### 1.    Legal Standard

"[B]road discretion is vested in the trial court to permit or deny discovery." *Dichter-Mad Family Partners, LLP v. United States*, 709 F.3d 749, 751 (9th Cir. 2013). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and

proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). The rule creates a "broad right of discovery" because "wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth." *Epstein v. MCA*, 54 F.3d 1422, 1423 (9th Cir. 1995) (quoting *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993)); *see also Arredondo v. Delano Farms Co.*, 2015 U.S. Dist. LEXIS 142602, at *5 (E.D. Cal. Oct. 19, 2015). Relevance to the subject matter of the litigation "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Bumpus v. U.S. Fin. Life Ins. Co.*, 2023 U.S. Dist. LEXIS 135918, at *12 (E.D. Cal. Aug. 3, 2023) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

Once the party seeking discovery satisfies the relevance requirements of Rule 26(b)(1), the party opposing discovery has the "burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." *Gomez v. Acharya*, 2020 U.S. Dist. LEXIS 186324, at *2 (E.D. Cal. Oct. 7, 2020). The opposing party is "required to carry a heavy burden of showing why discovery was denied." *Id.* (quoting *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)). "Consequently, boilerplate objections to a request for a production are not sufficient." *Salisbury v. Hickman*, 2013 U.S. Dist. LEXIS 115024, at *17 (E.D. Cal. Aug. 14, 2013) (citing *Burlington Northern & Santa Fe Ry. v. United States Dist. Court*, 408 F.3d 1142, 1149 (9th Cir. 2005)). Where a party unsuccessfully opposes a motion to compel without substantial justification, "the court *must* . . . require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A) (emphasis added).

### 2. There Is Good Cause to Compel the Plaintiff to Produce His Devices for a Limited Forensic Inspection.

"A party may seek forensic imaging of an electronic device under Fed. R. Civ. P. 34(a)(1)(A)." *AEG Holdco, LLC. v. Vazquez,* 2022 WL 19076641, at *3-4 (C.D. Cal. Nov. 15, 2022) (ordering turnover of electronic devices for forensic examination to determine which devices downloaded certain content). A showing of good cause is sufficient to allow the moving party to inspect the devices under Rule 26(b)(2)(B). *Id.* at *3 (citing *Wisk Aero LLC v. Archer Aviation Inc.,*

2022 WL 6250989, at *2–3 (N.D. Cal. Aug. 19, 2022) (collecting cases)); *see also United Artists Corp. v. United Artist Studios LLC,* 2019 WL 9049050, at *10 (C.D. Cal. Oct. 7, 2019) (ordering production of electronic devices for forensic examination of select business files using specific search terms due to respondent's inconsistent and deficient discovery responses); *Satmodo, LLC v. Whenever Commc'ns, LLC,* 2018 WL 3495832, at *4–5 (S.D. Cal. July 20, 2018) (ordering turnover of devices including laptops, desktops, smart phones, and tablets for forensic inspection of each device's recorded IP addresses, wiped data, and uninstalled/reinstalled operating systems); *Finkelstein v. San Mateo Cnty. Dist. Attorney's Off.*, 2018 WL 8193870, at *2 (N.D. Cal. May 17, 2018) (ordering production of electronic devices for forensic examination to prevent data from being lost from continued use of the devices); *Lifetouch Nat'l Sch. Studios, Inc. v. Moss-Williams,* 2013 WL 11235928, at *2 (N.D. Cal. Oct. 15, 2013) (ordering production of computers for forensic imaging because the information sought was not available otherwise); *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.,* 2012 WL 70428, at *3 (N.D. Cal. Jan. 9, 2012) (ordering production of electronic devices for forensic inspection of business records because serious questions existed regarding the reliability and completeness of the respondent's discovery responses); *Dawe v. Corr. USA*, 263 F.R.D. 613, 619 (E.D. Cal. 2009) (ordering turnover of devices for forensic inspection of business records and trademark use due to concerns that respondent hid and spoliated evidence).

Here, there is good cause to compel the plaintiff to comply with Apple's inspection request because (1) Apple seeks relevant information, as the plaintiff confirmed in his own discovery responses by stating that all information related to his claims resides on his Devices, and in his own discovery requests to Apple seeking the same information, (2) the information is not available from any other source, and (3) the request is tailored to eliminate any legitimate burden, convenience, or privacy concern and Apple agreed to pay for the costs.  By contrast, the plaintiff has not met his burden to *specifically* demonstrate how the request is objectionable, and his screenshot photos lacking metadata from his Devices are both inadequate and forensically unsound.

### a.    The inspection request seeks relevant information.

The inspection seeks information concerning the plaintiff's purchase, use, downloading, deletion, and other aspects of his use or access to the Digital Content he claims is at issue, which is

relevant to the plaintiff's claims that he may have lost Digital Content[11] and to Apple's defenses in many ways.  (*See* Vaughn Decl. ¶ 6.)  First, the information is relevant to the plaintiff's allegation that he could have lost unspecified Digital Content, which can be confirmed or disproven by a forensic review of his Devices.  (*See* FAC ¶ 16.)  While Apple's records identify what the plaintiff bought, they do not elucidate what he downloaded, used, or whether any such content is missing currently from his Devices.  The presence of any locally downloaded content, for instance, would be probative of whether the plaintiff knew that he had to download his purchased Digital Content to ensure continuous access to it.  Second, the plaintiff's Devices may contain data or metadata showing that he deleted copies of Digital Content downloaded to his Devices.  (Vaughn Decl. ¶ 6.)  If those deletions occurred after this case was filed and the plaintiff was on notice that Digital Content may become unavailable, that information would tend to disprove the materiality of the alleged omissions, eliminate damages, and raise spoliation and class certification concerns.  Finally, if the inspection shows that the plaintiff only has a small amount of Digital Content downloaded on his Devices, or if he has significant storage space to download more Digital Content, those facts could be relevant to materiality, damages, and class certification.  The data may also show that the plaintiff lost access to certain Digital Content for other reasons, such as a technical malfunction or corrupted content that caused it to be removed.

Apple's forensic expert confirms that this type of data and information is routinely found on Apple Devices. (Vaughn Decl. ¶ 6.)  Because this information "bears on, or . . . reasonably could lead to other matter that could bear on" several issues in this case, *Bumpus*, 2023 U.S. Dist. LEXIS 135918, at *12, good cause is satisfied.  *AEG Holdco*, 2022 WL 19076641, at *3-4 (good cause to compel respondent to turn over electronic devices for forensic examination). Courts routinely order forensic examination where the devices are "closely connected with the claims and/or defenses in the litigation." *In re Apple Inc. Device Performance Litig.,* 2019 WL 3973752, at *3 (N.D. Cal.

---

[11] To avoid a forensic inspection, the plaintiff's submission at p. 8 states that the plaintiff did not lose access to Digital Content, and then argues that whether he did or not is irrelevant. The FAC also does not allege that the plaintiff lost access to Digital Content.  Apple accepts the plaintiff's admission that he has never lost any Digital Content but is entitled to find out whether that is true.

Aug. 22, 2019) (collecting cases) (affirming special master's order authorizing forensic imaging of plaintiffs' devices in case involving, among others, price premium claims).   Numerous courts have granted Apple's requests to inspect plaintiffs' Apple devices.   *See, e.g.*, *Lerman v. Apple Inc.*, No. 1:15-cv-7381, ECF No. 44, at *2 (E.D.N.Y. Jan. 25, 2018) (ordering plaintiffs to produce their iPhones for inspection given that the plaintiffs "actively put their devices at issue"); *Herskowitz v. Apple Inc.*, 12-CV-2131-LHK, ECF No. 98 (N.D. Cal. Feb. 12, 2014); *Juel v. Apple Inc.*, 12-CV-3124-LHK, ECF No. 66 (N.D. Cal. Feb. 12, 2014).

In *Herskowitz*, for example, the plaintiffs filed putative class actions against Apple under the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, and Unfair Competition Law, Cal. Bus. & Profs. Code § 17200, *et seq.*, alleging that Apple engaged in unlawful billing practices concerning the sale of digital goods and services through the App Store, the iTunes Store, the iBookstore, and the Mac App Store.   *Herskowitz*, 12-CV-2131-LHK, ECF No. 1.   The plaintiffs' theory rested in part on the allegation that they were unable to access certain purchased content, primarily songs.   *Id.*   The Court granted Apple's forensic inspection request, finding:

> Because the Court finds that the data contained on Plaintiffs' computers and devices is likely to be highly relevant, and admissible evidence under Federal Rule of Civil Procedure 26(b)(1), Plaintiffs shall deposit such computers and devices with a third party vendor . . . for inspection by Defendant's [Apple's] experts.

*Id.*   The same result follows here.   The plaintiff has put his Devices, and his use of those Devices, at issue, and Apple has shown good cause for the inspection to obtain relevant data from the Devices. Further, the plaintiff has admitted in discovery responses that all his relevant information resides on his Devices.   (Ord Decl. Ex. ¶ 7, Ex. 6, at 10.))   A forensic image is necessary to preserve relevant evidence and avoid any further spoliation and to allow Apple to test the validity of the plaintiff's claims.

Despite admitting in discovery responses that his Devices contain information related to his claims, the plaintiff opposes Apple's inspection demand by arguing that nothing after the point of sale is relevant because he is pursuing a price premium theory.   That is not a bar to inspection.   *See e.g. In re Apple Inc. Device Performance Litig.*, 2019 WL 3973752, at *3 (permitting inspection in price premium case).   Even under a price premium theory, the plaintiff must prove each of the

elements of his claims, including standing, injury in fact, materiality, reliance, causation, and damages.  The plaintiff's conduct with respect to the Digital Content he purchased—*e.g.*, whether and when he accessed the Digital Content, whether he downloaded or deleted local copies, etc.— bears on these issues, including how material the alleged misrepresentations and omissions were to the plaintiff (and the reasonable consumer) and the value of the price premium he paid, if any.

The plaintiff's arguments also ignore that the information Apple seeks to collect from the Devices is relevant to *Apple's defenses*.  *See* Fed. R. Civ. Proc. 26(b)(1).  "[A] party is entitled to seek discovery on its theory of the facts and the law, and is not limited in discovery by the opponent's theory."  8 Wright & Miller, Federal Practice and Procedure § 2011 (3d ed.).  Apple has asserted numerous defenses—all of which remain operative in the case—that relate to the plaintiff's conduct post-purchase, including, as one example, whether he took steps to download his purchased content to preserve continuous access, as the Terms advised him and all Apple users to do.  (*See* ECF No. 27 (asserting affirmative defenses of estoppel, waiver, consent, assumption of the risk, failure to mitigate, acceptance, and others).)  The plaintiff cannot limit Apple's discovery by making and assuming the Court will accept what are essentially merits arguments regarding the propriety of his price premium theory and Apple's defenses to those claims and allegations.  *See*, *e.g.*, *Big City Dynasty v. FP Holdings, L.P.*, 336 F.R.D. 507, 511-12 (D. Nev. 2020) (allowing discovery related to a live defense and overruling the plaintiff's merits-based objection that the discovery concerned an affirmative defense that was "not [] appropriate" under the plaintiff's theory of the case); *Wagner Aeronautical, Inc. v. Dotzenroth*, 2022 WL 198805, at *2-3 (S.D. Cal. Jan. 20, 2022) (finding that defendants were entitled to discovery to support their defenses, and rejecting the plaintiff's attempt to limit how the defendant could attack its claims).  The parties will address those merits issues at an appropriate time, during class certification and/or summary judgment briefing.  For now, under the broad scope of discovery relevance, Apple is entitled to reasonable discovery that is relevant to testing the plaintiff's allegations and theory and to support its asserted defenses.[12]

---

[12] The plaintiff's cases are distinguishable or else do not stand for their cited proposition. In *In re Premera*, the defendant *satisfied* relevance as to information on the plaintiffs' devices, but the court concluded the inspection was not proportional and risked sweeping in irrelevant documents—unlike Apple's carefully tailored demand here. *See* 329 F.R.D. 656, 669-670 (D. Or. 2019). In *Dash v. Seagate Technology (US) Holdings, Inc.*, 2015 WL 4257329 (E.D.N.Y.

### b.        The information is not in Apple's records or any other source.

Good cause also exists because the data and information Apple seeks from the Devices is not available through any other means.  Courts may consider "the parties' relative access to relevant information" in determining the proper scope of a given discovery request.  Fed. R. Civ. Proc. 26(b)(1).  Apple does not have access to information regarding the plaintiff's actual usage on his Devices, his download and access activity and history, and similar information, which exists only on the Devices.  (Vaughn Decl. ¶ 6.)  The plaintiff's screenshots do not and cannot provide this information because they contain no metadata, are arbitrary snapshots in time, and can be manipulated.  (Vaughn Decl. ¶ 12.)  In any event, the plaintiff has the burden to prove the elements of his claims and to provide the evidence on which his claims are based.  *See, e.g.*, *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018); *Ries v. Ariz. Bevs. USA LLC*, 2013 U.S. Dist. LEXIS 46013, at *13 (N.D. Cal. Mar. 28, 2013).

The plaintiff is incorrect that Apple's records contain all of the information related to his purchase and use of Digital Content.  In particular, the plaintiff has argued that Apple's request for deletion activity is irrelevant because an Apple user cannot delete Digital Content from their Apple account.  Once again, the plaintiff is mischaracterizing the facts and Apple's argument.  Apple seeks to discover whether the plaintiff downloaded *local copies* of any of his purchased Digital Content to any of his Devices—and if so, whether he later deleted any of those locally stored files.  If the plaintiff downloaded local copies, as Apple's Terms advised him to do, then there would be no risk of potential loss of access to any purchased Digital Content because he would maintain continuous access to the locally downloaded copy.  If he did not follow Apple's advice, or if he deleted any local downloads, those facts would be relevant to materiality and the quantum of any alleged damages the plaintiff claims he suffered.  Apple has no visibility into this usage activity, which resides exclusively on the Devices and cannot be ascertained from screenshots.  Similarly, the

---

July 14, 2015), the Court *granted* the defendant's request to inspect the devices and hardware that were the subject of the plaintiff's claims, but denied any inspection of the plaintiff's documents and files because those were not relevant to the hardware issues. Likewise, none of the plaintiff's cases (*Aminov*, *Preston*, *Ford*) hold that a forensic inspection can *only* be allowed where there is evidence of improper conduct. Rather, the requisite showing is good cause. *See*, *e.g.*, *Aminov v. Berkshire Hathaway Guard Ins. Cos.*, 2022 WL 818944, at *1 (E.D.N.Y. Mar. 3, 2022).

1    plaintiff's offer to simply show Apple how he uses his Devices at his deposition misses the point.

2    Such a demonstration is no better than a screenshot because it also captures only a moment in time,

3    does not include metadata, and can be manipulated.

4                              **c.    Apple's inspection request is tailored to eliminate any legitimate
                                      burden, convenience, or privacy concern, and the plaintiff does
5                                     not meet his burden to show how the request is objectionable.**

6            The plaintiff has not met his burden to establish any legitimate objection to an inspection of

7    only a subset of relevant information without any undue intrusion on the plaintiff's privacy interests

8    or personal convenience.  In balancing the objecting party's privacy interests and burden concerns,

9    courts regularly allow forensic inspections where they are subject to the same types of protections

10   and protocols as those Apple proposes here.  *See In re Apple Inc.*, 2019 U.S. Dist. LEXIS 143267,

11   at *28 (finding the "serious invasion of Plaintiffs' significant and protectable privacy interest" was

12   "lessened . . . by the robust protections of the Protocol and the Stipulated Protective Order"); *Aeg*

13   *Holdco, LLC*, 2022 U.S. Dist. LEXIS 240129, at *14 (granting motion to compel forensic imaging

14   of device after noting that the production to a third-party vendor would "mitigate privacy and

15   confidentiality concerns").

16           From the very beginning, Apple attempted to address the plaintiff's privacy and burden

17   concerns and worked to develop a protocol to minimize those concerns, including giving the

18   plaintiff's counsel access to the forensic expert.  Apple will also shoulder the cost of the forensic

19   imaging.  And the forensic expert will travel to a location of the plaintiff's choosing and image the

20   Devices on a rotating basis to ensure no gap in access.  (Vaughn Decl. at ¶¶ 7-8.)  Apple will also

21   work with the plaintiff on a protocol to sequester any irrelevant information.  (Vaughn Decl. at ¶ 9.)

22   These protections are consistent with case law and more than enough to address the plaintiff's

23   concerns. For all of these reasons, the Court should grant Apple's motion to compel.

24       **B.    Plaintiff's Contentions and Points of Authorities**

25           **1.    Legal Standard.**

26           In a motion to compel, the moving party bears the burden of showing why the other party's

27   responses are inadequate or their objections unjustified. *Hawkins v. Shearer*, No. 2:19-CV-02295-

28   CKD P, 2021 WL 5417535, at *2 (E.D. Cal. Nov. 19, 2021); *see also Grabek v. Dickinson*, 2012

WL 113799, at *1 (E.D.Cal. Jan.13, 2012); *Womack v. Virga*, 2011 WL 6703958, at *3 (E.D.Cal. Dec. 21, 2011). Moreover, courts in this circuit have been reluctant to grant motions compelling forensic examinations of a party's computers. *See Moser v. Health Ins. Innovations*, Inc., 2018 WL 6735710, at *5 (S.D. Cal. Dec. 21, 2018) (noting that forensic examinations are generally regarded as drastic step and should only be used after a finding of improper conduct or intentional destruction of evidence); *Alexis v. Rogers*, 2017 WL 1073404, at *4 (S.D. Cal. Mar. 21, 2017) (noting that courts must consider the significant interests implicated by forensic imaging before ordering one). *Sophia & Chloe, Inc. v. Brighton Collectibles, Inc*., 2013 WL 5212013, at *2 (S.D. Cal. Sept. 13, 2013) (noting that absent concrete evidence of concealment or destruction of evidence, courts are cautious about ordering a forensic scan).

> **2.      Information Stored on Plaintiff's Devices Is Not Relevant to Any Claim or Defense in This Action.**

Defendant argues that forensic imaging of Plaintiff's personal devices would be relevant "to the plaintiff's claims that he lost Digital Content and to Apple's defenses in many ways." This argument lacks merit because, as Defendant stated above, it agrees that Plaintiff did not allege that he lost Digital Content. Apple also agrees that this is a price premium case.

Given that Defendant agrees that this is a price premium case, where the harm undoubtedly occurs at the moment when Plaintiff overpaid for Digital Content, anything that happened to his Digital Content thereafter—such as whether or not Plaintiff did or did not download Digital Content, whether he deleted copies of such content, whether or not he had storage space on his Device(s) to allow him to download content—is irrelevant.

Tellingly, Defendant fails to cite ***even one case*** where a court ordered that a device be turned over for forensic imaging in a case alleging a price premium theory of liability. Indeed, Plaintiff is aware of only two cases that addressed forensic scanning in the context of an action alleging payment of price premium, and each of those courts held that forensic scanning was not warranted because the information sought to be recovered through such imaging was irrelevant to the price premium claims. In *In re Premera Blue Cross Customer Data Sec. Breach Litig*., 329 F.R.D. 656 (D. Or. 2019), where plaintiffs alleged a "a market price premium theory," (*id*. at 669), the court

denied the moving party's motion to image the plaintiffs' computers holding that "[t]he relevance asserted . . . , however, is not closely related to Plaintiff's claims or damages, or even Premera's defenses. As discussed above, Premera has not shown any relevance to Plaintiffs' damages theories." *Id*. at 670. In *Dash v. Seagate Tech. (US) Holdings, Inc*., No. CV 13-6329 LDW AKT, 2015 WL 4257329 (E.D.N.Y. July 14, 2015), which also alleged a price premium theory of damages (*id*. at *2), the court rejected the moving party's motion to forensically scan files kept on the producing party's computer because they were not relevant to the plaintiff's claims. *Id*. at *7.

The cases cited by Defendant are inapposite because they concern actions where the device's physical performance was central to the plaintiff's claims, thereby necessitating an inspection of the actual device. For example, in *Lerman v. Apple Inc.*, No. 1:15-cv-7381 (E.D.N.Y. Jan. 25, 2018), the plaintiffs sued Defendant alleging that an update to their iPhones allowed Apple to "throttle" their phones, which allowed Defendant to purposefully diminish an iPhone's performance so that the phone's owner would be left with no other choice but to upgrade to a newer (and more expensive) phone. Thus, because there the phone's physical performance was put at issue, the court ordered a scan. *See id*. Initial Conference Tr. at 15:25-16:10. Another case cited by Defendant, *In re Apple Inc. Device Performance Litig*., No. 5:18-MD-02827-EJD, 2019 WL 3973752 (N.D. Cal. Aug. 22, 2019), also concerned claims relating to the plaintiffs' iPhones' performance and, as such, is uninstructive here. Finally, Defendant's reliance on *Herskowitz v. Apple Inc*., 5:12-cv-02131-LHK (N.D. Cal. Dec. 30, 2014), is also misplaced because the plaintiffs there alleged they were unable to access purchased content, which Plaintiff has not done here.

In sharp contrast to the cases relied upon by Defendant, Plaintiff's claims do not concern his Apple devices at all. Indeed, Digital Content purchased from Defendant is tethered to the purchasers' Apple User ID, not their devices. Using their unique Apple User IDs, consumers can view and listen to their purchased Digital Content on any device they log into, even on devices ***not owned by them***. Surely, Defendant could not seek to forensically image all devices that Plaintiff has ever used employing their Apple User ID.

Importantly, the only electronically stored information relevant to Plaintiff's claims and to Defendant's defenses resides in Defendant's business records. Based on the discovery produced by

1  Defendant to date, it is clear that Defendant knows every single piece of Digital Content purchased

2  by Plaintiff, and it knows that certain Digital Content can become unavailable for viewing or

3  listening on Apple's platform even though Defendant represented the content was "purchased."

4  Even though Defendant knows that it possesses the only relevant information in this case –

5  Plaintiff's purchase histories -- Defendant attempts to redefine the allegations in this action and

6  assert that the information sought through its request to forensically image Plaintiff's devices is

7  relevant through the declaration of a purported "expert," Mr. James Vaughn.

8       Mr. Vaughn's alleged qualifications in forensic scanning notwithstanding,[13] Mr. Vaughn is

9  unequivocally unqualified to opine on the legal issue of whether relevant information in a price

10  premium case resides on Plaintiff's devices. Indeed, this assessment is entirely within an attorney's

11  wheelhouse.

12       In attempting to justify a forensic scan, Defendant also argues above that even under a price

13  premium theory, Plaintiff needs to prove "standing, injury in fact, materiality, reliance, causation,

14  and damages." However, while Plaintiff agrees that he has to prove these elements, a forensic scan

15  is not necessary to do so. Plaintiff can prove standing via evidence that he purchased Digital Content

16  and that proof is squarely within Defendant's possession.  Plaintiff's injury in fact was his

17  overpayment for Digital Content (i.e., his damages), and this is something that will be established

18  through expert witness testimony as the difference between what Plaintiff paid versus what he would

19  have paid had the Digital Content been represented in a non-misleading manner.

20       Reliance and materiality will be established by Plaintiff's testimony that he relied on words

21  like "Buy" (versus "Rent") and "Purchased" when considering whether to purchase Digital Content

22  and that those words played a material role in his decision to "Buy" Digital Content from Defendant.

23  Finally, because Defendant's misleading statements caused Plaintiff to overpay for Digital Content,

24  the causation element is readily met. In sum, there is nothing residing in Plaintiff's Apple devices,

25  which Apple does not already have, that would be necessary to prove any of the above elements of

26

---

27  [13] Of course, Mr. Vaughn has not been qualified as expert in forensic scanning in this litigation.
Neither his qualifications nor his opinions in this case have been tested or examined by Plaintiff

28  through deposition or any other discovery.

Plaintiff's claim.  For these reasons, Defendant's argument lacks merit.

In sum, notwithstanding Defendant's mischaracterization of Plaintiff's claims, Plaintiff's FAC makes clear that his claims arose when he overpaid for Digital Content. Accordingly, any information which may be stored on his phone regarding his use (or lack of use) of Digital Content after his purchase is wholly irrelevant to any claims or defenses in this action and thus not discoverable.

### 3.  Forensic Imaging Is Exceedingly Rare and Only Ordered in Cases Where Improper Conduct Is Shown.

Based on the allegations in the FAC, Defendant cannot meet its burden of establishing the relevance of any information stored in Plaintiff's personal devices. However, even if the Court were to take an unusually broad view of relevance, Defendant is not entitled to such invasive methods as a search of Plaintiff's cell phones and other devices when less invasive and burdensome discovery methods are available.

Because of their intrusive nature, forensic examinations of electronic devices are generally considered a drastic discovery measure. *Aminov v. Berkshire Hathaway Guard Ins. Companies*, No. 21-CV-479 (DG)(SJB), 2022 WL 818944, at *1 (E.D.N.Y. Mar. 3, 2022)(parenthetical).  *See also John B. v. Goetz*, 531 F.3d 448, 460 (6th Cir. 2008) (warning that courts should be cautious of ordering forensic scans where the connection between the devices sought to be imaged and the claims in the lawsuit are either vague or unsubstantiated and when there is no evidence of purposeful or intentional destruction of ESI); Fed. R. Civ. P. 34(a) Advisory Committee's note to 2006 amendment (noting that "the addition of testing and sampling to Rule 34(a) with regard to ... electronically stored information is not meant to create a routine right of direct access to a party's electronic information system, although such access might be justified in some circumstances. Courts should guard against undue intrusiveness resulting from inspecting or testing such systems.").

Thus, even where relevant information may be found on a litigant's device (which, as Plaintiff has demonstrated, is not the case here), forensic examination by the opposing party may be appropriate only "in situations where a party can show improper conduct on the part of the

responding party." *Preston v. Cnty. Of Macomb*, No. 18-12158, 2021 WL 4820556, at \*3 (E.D. Mich. Oct. 15, 2021) (alteration omitted). *See also In re Ford Motor Co.*, 345 F.3d 1315, 1317 (11th Cir. 2003) (ordering forensic scan due to non-compliance with discovery rules); *FCA US LLC v. Bullock*, 329 F.R.D. 563, 568 (E.D. Mich. 2019) (same).Under this heightened standard, cause to order forensic imaging may only be made by a showing that the producing party has failed to comply with its duties under the discovery rules.  Thus, absent the showing of improper behavior by a responding party, courts typically deny the requesting party's motion to compel.

### a.     Plaintiff Engaged in No Improper Conduct.

There is not even a scintilla of evidence that Plaintiff has not fulfilled his discovery duties in this price premium case. As a preliminary matter, the only information relevant to the parties' claims and defenses—proof that Plaintiff purchased Digital Content from Defendant—is squarely within Apple's possession, custody or control, and indeed a full list of Plaintiff's purchased content has been provided during discovery by Defendant. Defendant's request to obtain information from Plaintiff that Defendant already possesses is cumulative, duplicative, and can clearly be obtained from a source that is more convenient, less burdensome, or less expensive: Apple's business records.

Nevertheless, Defendant argues above that Plaintiff's screenshots of his Apple devices showing purchased Digital Content are incomplete because they are only a snapshot in time and lack any metadata. First, as noted by Plaintiff elsewhere, the only snapshot in time relevant in a price premium case is at the point of purchase. This information is in Defendant's possession, custody or control. Second, metadata, generally information embedded in Digital Content related to its usage, is also irrelevant because anything that occurs after Digital Content's purchase is irrelevant in a price premium case.

Defendant's spoliation of evidence argument also fails because Plaintiff's iPhones do not house any evidence relevant here, thus the purported risk of spoliation is a red herring.

### b.     Defendant Rejected Less Intrusive Means to Gain the Requested Information.

Plaintiff has already produced screenshots of Digital Content purchased on his iPhone. Plaintiff also offered Defendant the opportunity to inspect the Digital Content stored on his device

1    at a deposition and to record it via videographic means.  All of these less intrusive, but equally

2    revelatory methods of gaining access to the (irrelevant) information sought by Defendant, were

3    rejected.

4            Defendant's argument that it needs to see what Plaintiff may have deleted, in addition to

5    being irrelevant to the claims at issue in this litigation, also mischaracterizes the way that Apple

6    devices and the iTunes platform works. Defendant well knows that once purchased, Digital Content

7    remains available on its platform for Plaintiff's benefit; that is, until it is removed or modified by

8    the copyright owner, in which case "purchased" Digital Content is suddenly and irrevocably gone

9    forever. While Apple's iTunes platform allows consumers to "hide" Digital Content in their Digital

10   Content library, as long as that Digital Content has not been modified or removed by the copyright

11   holder, Plaintiff **cannot delete or modify it**. Thus, Apple's attempt to justify forensically scanning

12   Plaintiff's iPhones by representing to this Court that Plaintiff can "delete" Digital Content is untrue

13   and disingenuous.

14           Finally, Defendant's reasoning for wanting to forensically scan every Apple device owned

15   by Plaintiff, including devices he may not have used for years, is also based on a misrepresentation

16   about how Digital Content is housed on its platform and how users access it. "Purchased" Digital

17   Content (if not removed or modified by the copyright owner) remains housed on Apple's platform

18   and can be accessed from any electronic device that Plaintiff logs onto with his Apple ID and

19   password (or via the Apple app installed on a smart TV), including devices owned by other people.

20   In other words, a consumer, who purchased Digital Content via an iPhone, can access and view that

21   content on any other compatible device via iTunes. Thus, Defendant's request to image every Apple

22   device used by Plaintiff, when the available purchased Digital Content in each of those devices will

23   be exactly the same, is overly broad, unduly burdensome, not proportional to needs of the case and,

24   importantly, harassing.

25           In sum, Defendant failed to establish the relevance of any of the information sought via a

26   forensic scan. Even if the information stored on Plaintiff's devices were relevant, which it is not,

27   Defendant failed to establish that Plaintiff has engaged in improper conduct in discovery and to

28   refute the fact that there are less intrusive means for obtaining responsive information in this action

than the forensic inspection of all of Plaintiff's personal devices, which is the well-settled standard applicable to such requests.

Respectfully submitted,

Dated: October 4, 2023

**DLA PIPER LLP (US)**

By: _/s/ Isabelle Ord_
    ISABELLE L. ORD
    Attorneys for Defendant
    APPLE INC.


**DLA PIPER LLP (US)**

By: _/s/ Carlos Ramirez_
    CARLOS F. RAMIREZ
    Attorneys for Plaintiff
    DAVID ANDINO

JOINT STATEMENT RE DISCOVERY DISAGREEMENT